722 A.2d 419

**Jerome BOWERS**

v.

**STATE of Maryland.**

**No. 411, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 6, 1999.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MURPHY, C.J., and EYLER and ROBERT C. MURPHY (Ret., specially assigned), JJ.

EYLER, Judge.

The appellant, Jerome Bowers, was convicted by a jury in the Circuit Court for Baltimore City of first degree assault, second degree assault, and use of a handgun in the commission of a crime of violence. Appellant was acquitted of charges of attempted first degree murder, attempted second degree murder, and wearing, carrying or transporting a handgun. After merging the conviction of second degree assault, the court imposed a 25 year sentence for the conviction of first degree assault, and a consecutive five year sentence for the

handgun conviction. Appellant had represented himself at trial.

Appellant inquires on appeal (1) whether the trial court erred by "forcing" him to represent himself at trial despite a failure to comply with Maryland Rule 4–215, and (2) whether the trial court erred by refusing to grant his motion for judgment of acquittal on the attempted first degree murder and attempted second degree murder charges. We find no error, and affirm the judgments of the trial court.

### FACTS

Jina Jun, a carry-out restaurant employee in Baltimore City, was outside of the restaurant just before closing time on April 13, 1997, when she heard an argument in the store. Jun testified that she saw a man she believed to be appellant and Clarence Jones, the victim, come out of the store. She testified that the man was pointing a gun at Jones and they were struggling. Jun heard "about more than five" gunshots and saw Jones and his assailant run in opposite directions. Five minutes later, Jones returned to the restaurant bleeding and with a hole in his pants.

Jones testified that as he was about to leave the restaurant, appellant grabbed him and shot him once in the right thigh area. The bullet had gone into and then out of the victim's leg. Jones heard a total of "about three" gun shots. He testified that he had never seen appellant before, and did not know why appellant shot him.

Jones's friend, Dwayne Newton, said that he saw appellant grab Jones in the doorway to the restaurant, and then saw "big flames go straight between them." Newton said that there were "three or four" gunshots.

### Discussion

Appellant first contends that the trial court did not comply with the requirements of Maryland Rule 4–215(a)(3) relating to notice of the allowable and mandatory penalties for all crimes charged, and thereafter permitted him to discharge his

appointed attorney on the day of trial, without allowing him to retain another attorney. Appellant argues that he was not advised of the allowable penalties or mandatory penalties for two of the charged crimes at his very first appearance in court without counsel in accordance with Rule 4–215(a)(3). Appellant asserts that he is therefore entitled to a new trial.

Appellant also contends that the trial court erred by refusing to grant his motion for judgment of acquittal as to the attempted first degree murder and attempted second degree murder counts. Appellant acknowledges that the jury verdict acquitting him of those charges rendered any error harmless as to those counts, but asserts that the erroneous submission of those counts to the jury may have resulted in a compromise verdict affecting the jury's consideration of the remaining counts. For this reason, appellant seeks a new trial.

## I.

### A. *Appearances Before the Circuit Court*

On July 23, 1997, appellant first appeared in court, without a lawyer, for his arraignment. At this time, he was advised of all allowable penalties and mandatory penalties relating to the six crimes charged in the case, without consideration of any enhancement of penalties that might occur at sentencing due to the fact that appellant had previous convictions on his record. On this date, appellant was told in part that he would face a maximum of 25 years for a conviction of first degree assault, between five and 20 years for a conviction of using a handgun in the commission of a crime of violence, and a maximum of three years for wearing, carrying or transporting a handgun. Appellant was informed that a sentence for use of a handgun in committing a violent crime would be served without the availability of parole during the first five years.

On August 13, 1997, appellant appeared in court for a "rearraignment." Appellant claimed, as he did on his first appearance, that he would be represented by a privately retained attorney, although again no defense attorney appeared on his behalf. Appellant stated that he was not

prepared on this date because he had misread the date on his subpoena. The court determined that appellant had waived his right to counsel at arraignment and set a trial date.

On October 27, 1997, the scheduled trial date, appellant appeared for a third time in court without counsel. Appellant claimed his efforts to retain private counsel had failed, and he requested representation by the Office of the Public Defender. The court determined that appellant had not effectively waived his entitlement to representation by the Public Defender. At this hearing, the court informed appellant for the first time in open court that the State had filed a notice of additional penalties, under which the maximum possible sentence for wearing, carrying or transporting a handgun would be increased from three to ten years, with a mandatory minimum sentence of one year.[1] The case was continued, in part to allow appellant to request representation by an attorney from the Office of the Public Defender. Thereafter, the case was scheduled for trial on December 15 and an attorney from the Public Defender's Office was assigned to appellant's case.

On December 15, 1997, appellant appeared for trial with an attorney from the Office of the Public Defender. The attorney for the State informed appellant again of the enhanced penalty for the handgun charge, and then stated,

> The other enhanced penalty served upon the defendant is if he is convicted of a crime of violence in this case or the charge of use of a handgun in commission of a crime of violence in this case, that he will be sentenced—and this is a mandatory sentence, not within the court's discretion—that the defendant will receive whatever sentence he receives for that crime of violence, but he will have to serve the first ten years of that without parole.

Appellant then attempted to inform the court of his dissatisfaction with his attorney's handling of pre-trial motions. The following occurred:

---

1. *See* Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27 § 36B(b)(2).

THE COURT: Do you want to be represented?

[THE DEFENDANT]: I'm telling you the reason why.

THE COURT: You do not have the privilege of deciding who your public defender will be. You either want to be represented or you don't.

[THE DEFENDANT]: I want representation, but I want to discuss why I do not want to be represented by her.

THE COURT: You don't want a lawyer?

THE DEFENDANT: I don't want to be represented by her, particularly.

THE COURT: All right. Put it on the record.

Appellant then detailed his perception that his appointed attorney had acted unprofessionally toward him, had refused to present pre-trial motions that he had worked on, and would not assist him to press criminal charges against another person. Appellant's colloquy with the court then continued:

THE COURT: I find no major or just reason to discharge your lawyer. You want a lawyer to represent you in the trial?

THE DEFENDANT: Yes, I do, but I don't want any improper representation.

THE COURT: First of all, stand up for a minute.

This is your lawyer. She is in this case. She is ready to represent you. Do you want her to represent you or not?

THE DEFENDANT: I don't want her.

THE COURT: All right. Let's pick a jury.

After a recess, the case proceeded to trial with appellant representing himself throughout trial and sentencing.[2]

### B. *Waiver of Counsel—Rule 4–215*

Rule 4–215(a) provides:

---

2. Appellant is represented on this appeal by an attorney from the Office of the Public Defender.

*(a) First appearance in court without counsel.* At the defendant's first appearance in court without counsel, ... the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

Subsection (e) provides,

*(e) Discharge of counsel—Waiver.* If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new coun-

sel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule if the docket or file does not reflect prior compliance.

Subsections (b), (c) and (d) pertain to the express waiver of counsel, waiver by inaction in District Court, and waiver by inaction in Circuit Court, respectively. Subsections (b), (c), (d), and (e) all similarly require compliance with the protections of subsection (a) before a court may determine that a defendant may relinquish the right to an attorney.

Appellant focuses on the language of subsection (a)(3), contending that the additional and mandatory penalties that were based on his prior convictions are "allowable" or "mandatory" penalties contemplated by the Rule, and that he should have been informed of the full extent of such enhanced penalties upon his first appearance in court without representation. Appellant does not dispute that he was fully advised of these enhanced penalties before the discharge of his attorney on the eve of trial. Appellant also does not separately challenge the propriety of the discharge of his counsel or the trial court's decision to proceed to trial shortly thereafter. Finally, appellant does not dispute that he was properly informed of all of his other rights under section (a) during his first appearance in court. Appellant contends only that the asserted violation of Rule 4–215(a)(3) mandates a new trial of the charges of which he was convicted. Appellant implies that the arraignment judge's failure to advise him fully of his rights under section (a) upon his very first appearance in court either can not be cured, or was not cured in this case until the day of trial, and thus in some way infected his discharge of defense counsel.

■ The language of Rule 4–215(a), mandating that its advisements be given on the first appearance of an unrepresented defendant, will normally produce error when a defendant is not initially advised under the Rule and, thereafter, does not obtain counsel. In the present case, appellant was represented by counsel at some point prior to and on the day of trial and, in open court, received all of the advice potentially

due to him under section (a) before discharging his attorney. The discharge of appellant's attorney and waiver of his right to counsel therefore complied with the mandate of section (e) that the court ensure there has been compliance with subsections "(a)(1)–(4) . . . if the docket or file does not reflect prior compliance." On the peculiar facts of this case—where a defendant appears initially without counsel, the requirements of section (a) are substantially complied with, and the defendant thereafter obtains counsel but then discharges counsel before trial—we conclude that non-compliance with the timing of all advisements required under subsections (a)(1)–(4) does not constitute error if the defendant is fully advised under those subsections before counsel is discharged. Given our conclusion, it is unnecessary to decide whether appellant was entitled to notice of enhanced penalties under recidivism statutes at his first appearance in court without counsel.[3]

To conclude that a failure to comply literally with 4–215(a) upon an unrepresented criminal defendant's first appearance in court is always error would render certain language of Rule 4–215(b) surplusage. Section (b) pertains to an unrepresented criminal defendant who wishes expressly to waive the right to counsel. Since subsection (a)(4) requires compliance with the express waiver provisions of section (b) if a defendant wishes to waive counsel on his or her first appearance in court, the language of section (b), standing alone, applies to express waivers that do not occur on a defendant's first day in court. Section (b) requires in part that

> [i]f the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry.

---

**3.** We note that Rule 4–245, entitled "Subsequent offenders," requires that notice be given to criminal defendants of alleged previous convictions, when such convictions are asserted as the basis either for allowable additional penalties or mandatory penalties. The notice of previous convictions is required at varying times prior to trial, sentencing, or acceptance of a plea of guilty or nolo contendere, depending on the circumstances, and is different in substance and purpose from the notice of potential penalties mandated by Rule 4–215.

If any noncompliance with section (a) constituted error, there would be no need subsequently to ensure that section (a) is complied with before a court could accept an express waiver of counsel under section (b). Rule 4–215 is, in this respect, ambiguous.

■ We need not view Rule 4–215 in isolation, but may read it "in light of the full context in which it appears, and in light of external manifestations of intent or general purpose available through other evidence." *State v. Bell,* 351 Md. 709, 718, 720 A.2d 311 (1998) (citing *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424 (1997)). *See also Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628 (1987). A review of the development of Rule 4–215 indicates that the timing of advisement of the potential punishment for each crime upon a defendant's first appearance in court is not an enhanced protection afforded to defendants, but a tool designed to promote economy of judicial resources. Rule 723, the predecessor to Rule 4–215, contained an analogous inquiry and advisement of rights and potential penalties.

In debating changes to Rule 723 in 1982, as part of the redesignation that would produce substantially the Rule in force today,[4] the Rules Committee considered the point in time at which the advisement of rights and penalties should be given. In an early draft of the new Rule, an advisement of certain rights apparently would have been required whenever a defendant appeared without counsel without previously having waived the right to counsel, while an advisement of penalties was apparently required only as part of the procedure for an express waiver of counsel. *See* Md. Court of Appeals, Standing Comm. on Rules of Practice and Procedure ("Md. Rules Comm."), Minutes of September 10–11, 1982, p.

---

**4.** Subsection (a)(3) was amended on April 7, 1986, effective July 1, 1986, by the deletion of "or minimum" following the word "mandatory." Other amendments made on this date and on May 9, 1991, do not bear on the substance of the Rule that pertains to the present case.

71. According to the minutes of the committee meeting, Judge McAuliffe inquired whether the proposed Rule

> intends the waiver inquiry to be made every time the defendant appears in court without counsel, or only on the first occasion he appears without a lawyer. [Judge McAuliffe] noted that under current Rule 723, when a defendant appears in court without a lawyer but is not waiving his right to counsel, the court must advise the defendant of several specified matters. If the defendant thereafter appears at trial without counsel, the court can find a waiver. . . .

> Judge McAuliffe stated that what worries the court is the defendant who doesn't want to waive his right to counsel but is using the right and the safeguards to abuse the system. The Court needs to be able to find a waiver and curtail these abusive tactics. . . . Judge McAuliffe reiterated that under current practice, once the inquiry is properly done and the record so reflects, it does not have to be redone.

> Mr. Jones questioned how the judges presiding at subsequent hearings can be sure the original waiver is still effective, i.e. how much of the litany needs to be repeated on subsequent occasions. Judge Proctor stated that the judge presiding at a later hearing cannot be sure the judge presiding at the hearing where the inquiry was made covered all the bases.

> Judge McAuliffe commented that protection is afforded the subsequent judge through the State's Attorney's Office. If the first judge missed something, the State's Attorney will note it and will inform the next judge of the omission so that it can be rectified. He asserted that if the defendant is fully advised of his rights at his initial appearance without counsel, the trial judge, at the commencement of the trial, can simply determine if there is a good excuse for the defendant's appearing without a lawyer. Thus, if there is a prior waiver, the court can make sure it sticks where no good excuse dictates otherwise. And where there is no prior waiver, the court can find one by inexcusable inaction.

Md. Rules Comm., Minutes of September 10–11, 1982, pp. 73–75. Thereafter, Judge McAuliffe suggested that section (a) be limited to a defendant's first appearance without counsel. *Id.* at 76. At a subsequent meeting, an amended draft of the Rule was considered. In this draft, section (a) was titled, "*First* Appearance Without Counsel," and the proposed language of this section, by the end of the meeting, was substantially the same as it is today. *See* Md. Rules Comm., Minutes of November 19–20, 1982, p. 46.

In short, the Rules Committee recommended that the Rule 4–215(a) advisement of rights and penalties be conducted upon a defendant's first appearance in court so that a subsequent judge would have greater power to "curtail ... abusive tactics." It was contemplated by the Committee that if part of the litany were omitted, the State could point out the problem to a subsequent judge "so that it can be rectified." Under the other sections of the Rule, the problem would have to be corrected before a waiver or discharge could be found.

The Maryland cases cited by appellant are distinguishable from the present case. Appellant cites *Smith v. State,* 88 Md.App. 32, 42, 591 A.2d 902 (1991), and *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987), for the proposition that Rule 4–215 is one of the "precise rubrics that the courts are required to follow." The two defendants in *Parren* were represented by counsel on their first appearance in court, but thereafter expressly waived their right to counsel and defended themselves at trial. *Parren,* 309 Md. at 266–67, 523 A.2d 597. The Court of Appeals was faced with deciding whether the defendants' express waivers were rendered ineffective by the fact that there was "nothing in the record to establish that the defendants were told by the court or by counsel of the penalties involved." *Id.* at 276, 523 A.2d 597. Such notice apparently was never given. In discussing the waiver inquiry that was conducted before Parren and his co-defendant Bright waived counsel, the Court of Appeals stated, "in the contemplation of all of the circumstances under which the waivers were tendered, one would be hard pressed to conclude that, as a practical matter, neither Bright nor Parren [knew] what he

was doing or that the choice of either for self-representation was not made with eyes open." *Id.* at 275, 523 A.2d 597. Nevertheless, the Court remanded the case in part due to the failure of the attorneys or trial court to notify the defendants of the allowable and maximum punishments. After citing federal cases interpreting the right to effective assistance of counsel, the Court stated, "This Court obviously shares the regard for the vital part which knowledge of the allowable penalties by the defendant plays in the determination of the effectiveness of a waiver of counsel." *Id.* at 282, 523 A.2d 597. The Court then held that the failure to comply with Rule 4–215(a)(3) "rendered [the defendants'] waivers of counsel ineffective and that the court erred in accepting the waiver of each of them as freely and voluntarily made." *Id.*

Chief Judge Murphy and Judge McAuliffe joined with Judge Rodowsky in his dissent from this portion of the majority opinion. Judge Rodowsky noted that, when no sanction for noncompliance with a rule is prescribed, Rule 1–201(a) allows a court to compel compliance with a rule, or "determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule." *Parren,* 309 Md. at 283, 523 A.2d 597 (Rodowsky, J., dissenting) (quoting Rule 1–201(a)). On the facts in *Parren,* Judge Rodowsky concluded that "[b]ecause the purpose of Rule 4–215 is to implement the constitutional rights to counsel and to self-representation, and because the totality of the circumstances in this case shows that those rights were preserved, there is no need to remedy the technical violation of the rule." *Id.* at 284, 523 A.2d 597.

*Parren* did not involve a violation of Rule 4–215(a), but an improper discharge and waiver of counsel due to the trial court's failure to comply with the mandate of those sections that the advisements contained in section (a) be given at a later stage. Because the error in *Parren* affected the actual waiver of counsel, it was far less technical than the alleged violation in the case at bar.

The other cases cited by appellant reinforce our conclusion. In *Smith v. State,* a defendant appeared without counsel in circuit court, received at best a partial advisement of his rights under Rule 4–215(a), and thereafter was found to have waived his right to counsel by inaction. *See Smith,* 88 Md.App. at 40–42, 591 A.2d 902. In light of the fact that, after noncompliance with Rule 4–215(a), there was no inquiry at all to determine whether appellant would knowingly and voluntarily waive his right to counsel, we held that it was error for the trial court subsequently to have found a waiver by inaction under Rule 4–215(d). *Id.* at 42, 591 A.2d 902.

In *Smith,* we explicitly relied on the similar case of *Evans v. State,* 84 Md.App. 573, 581 A.2d 435 (1990). *Evans* also involved a waiver of counsel by inaction after noncompliance with Rule 4–215(a) upon the defendant's initial appearance in circuit court. We concluded that the trial court "erred when it required appellant to be tried without counsel without properly advising him at his first appearance in court *or* conducting a proper waiver hearing." *Evans,* 84 Md.App. at 574, 581 A.2d 435 (emphasis added). We explained: "It was thus appropriate for trial to proceed with appellant unrepresented only if appellant explicitly waived counsel." *Id.* at 580–81, 581 A.2d 435. In both *Smith* and *Evans,* a violation of 4–215(a) infected a determination of waiver by inaction, but under the same reasoning would not have affected a defendant's express waiver or discharge of counsel.

More recently, in *Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995), the Court of Appeals considered a trial court's failure to advise a defendant of the penalties he could receive if convicted, after he expressed a desire to represent himself at trial. The defendant appeared for trial with a lawyer, but asked to waive his right to counsel, and proceeded to trial without representation. *Moten,* 339 Md. at 408, 663 A.2d 593. The defendant was thereafter convicted by a jury. *Id.* The Court of Appeals held that, "under *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987), harmless error analysis is inapplicable to a violation of Maryland Rule 4–215(a)(3), and Moten is

therefore entitled to reversal of his conviction and a new trial." *Id.* at 409, 663 A.2d 593.

Of course, the Court could not have been referring to a pure violation of Rule 4–215(a)(3), which, standing alone, applies only to a defendant's first appearance in court without counsel. Although it is unclear whether Moten was represented upon his first appearance in court, on the day at issue in the case, the day of trial, Moten initially appeared with a lawyer. In failing to advise Moten of the allowable penalties for the crimes charged, the trial court may have violated Rule 4–215(b) or Rule 4–215(e), as those rules mandate subsequent compliance with 4–215(a)(3), but an initial advisement under Rule 4–215(a)(3) was not at issue in the case.

Instead, the Court stated it had previously found in *Parren* that "the trial court erred when it accepted the defendants' waivers as freely and voluntarily made without first advising defendants as to the charges and penalties they faced." *Id.* at 411, 663 A.2d 593 (citing *Parren,* 309 Md. at 282, 523 A.2d at 608). This central concern, that a full advisement of penalties be given before a waiver is accepted, accords with our language in *Evans, supra.*

### C.  *Conclusion*

■  Rule 4–215, read as a whole, employs a single waiver inquiry that must be complied with at least once before a waiver or discharge of counsel may be found. Section (a) of the rule, standing alone, is not a waiver inquiry, but enables a trial court to employ the other sections of the rule efficiently to achieve a waiver of the right to counsel or discharge of existing counsel. For this reason, Rule 4–215(a) should always be followed upon a criminal defendant's first appearance in court without counsel.

■  In the present case, appellant does not dispute that he was fully advised of the maximum, enhanced penalties allowed for the crimes charged before he discharged his appointed counsel and before he was tried. Appellant's decision to discharge his attorney and represent himself was not affected

by a lack of appreciation for the maximum penalties he could receive if convicted, but apparently was made voluntarily and with an appreciation of the consequences. It is undisputed that the trial court's discharge inquiry complied with Rule 4–215(e). The actions of the trial court, taken as a whole, thus complied with Rule 4–215. Alternatively, any error due to noncompliance with subsection (a) was purely technical at best and harmless beyond a reasonable doubt. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976) (announcing the standard for harmless error in a criminal case).

A new trial would convey no practical benefit to the appellant other than a second chance to defend against the crimes for which he was duly convicted. On the facts of this case, we refuse to grant appellant's request.

## II.

◾ We also find no merit in appellant's contention that he should be granted a new trial because the trial court erroneously denied his motion for judgment of acquittal, and then submitted counts to the jury that prejudiced its verdict as to the assault and handgun counts of which appellant was ultimately convicted. Appellant cites several cases wherein the State had failed to produce sufficient circumstantial evidence to satisfy the intent element of attempted murder. He argues that there was no evidence to show that death was a probable consequence of firing several shots because most of the shots missed the victim and only one bullet struck the victim in the thigh. We do not reach the substance of appellant's motion for judgment of acquittal below, because we conclude that the submission of the attempted murder and handgun counts to the jury, if erroneous, was harmless beyond a reasonable doubt under the *Dorsey* standard. 276 Md. 638, 659, 350 A.2d 665 (1976).

Appellant argues that the opinions of the Court of Appeals in *Sherman v. State,* 288 Md. 636, 421 A.2d 80 (1980), and *Brooks v. State,* 299 Md. 146, 472 A.2d 981 (1984), support his conclusion that it would be impossible to declare any error by

the trial court harmless beyond a reasonable doubt. In *Sherman*, the trial court had granted a motion for judgment of acquittal as to two counts of the indictment, but permitted these "dead counts" to be taken into the jury room along with three remaining, active counts. *Sherman*, 288 Md. at 638, 421 A.2d 80. The Court of Appeals determined that this action violated Rule 758(a), in force at that time, and that the violation could not be cured through cautionary instructions. *Id.* at 641, 421 A.2d 80.

The defendant in *Brooks* was convicted of robbery with a deadly weapon, conspiracy to commit armed robbery, and carrying a deadly weapon with the intent to injure. *Brooks*, 299 Md. at 151, 472 A.2d 981. The trial judge had granted Brooks's motion for a judgment of acquittal at the close of the State's evidence as to the conspiracy count, but then reconsidered its ruling and denied the motion. *Id.* at 152, 472 A.2d 981. The Court of Appeals determined that the submission of the conspiracy count to the jury violated Maryland's common law prohibition against double jeopardy. *Id.* at 155, 472 A.2d 981. With little accompanying discussion, the Court concluded that the submission of the conspiracy charge also brought into question the validity of the remaining judgments. *Id.* at 156–57, 472 A.2d 981. Thus, both *Sherman* and *Brooks* involved the potential taint of placing "dead counts" before the jury, counts of which the defendants had already been acquitted as a matter of law.

The defendant in *Poole v. State*, 295 Md. 167, 453 A.2d 1218 (1983), was convicted of the murder of MacLarty, a pharmacist whose pharmacy was robbed by the defendant, felony murder of a co-assailant who was killed by MacLarty, robbery with a dangerous weapon, and use of a handgun in a crime of violence. *Poole*, 295 Md. at 171, 453 A.2d 1218. The Court of Appeals reversed the felony murder conviction in light of the intervening case of *Campbell v. State*, 293 Md. 438, 452, 444 A.2d 1034 (1982) ("[C]riminal culpability ordinarily shall not be imposed for lethal acts of nonfelons that are not committed in furtherance of a common design."), but determined that the submission of the remaining counts to the jury was not

affected by the felony murder count. *Id.* at 174–75, 453 A.2d 1218. In distinguishing *Sherman,* the *Poole* Court stated that,

> although the jury was allowed to take the indictment into the jury room during deliberation, there were no "dead" counts in the indictment. Poole had not been acquitted on any of the counts. The indictment against him charged him with, *inter alia,* the murder of [his co-assailant] and use of a handgun in the commission of a felony. Accordingly, these counts were properly submitted to the jury.

*Id.* at 174, 453 A.2d 1218. The Court added that each count in an indictment is regarded as a separate indictment, quoting *State v. Moulden,* 292 Md. 666, 681, 441 A.2d 699 (1982), and that it is the responsibility of the jury "to consider each count and make a determination as to guilt or innocence thereon without consideration of any other count." *Poole,* 295 Md. at 174–75, 453 A.2d 1218.

The present case is very similar to the recent case of *Braxton v. State,* 123 Md.App. 599, 720 A.2d 27 (1998). In that case, the defendant was convicted of, *inter alia,* murder and armed robbery. *See Braxton,* 123 Md.App. at 609, 720 A.2d 27. Braxton had moved for a judgment of acquittal on attempted carjacking charge, which was denied, but he was later acquitted of that charge. *Id.* at 653, 720 A.2d 27. Braxton argued that the submission of the carjacking charge to the jury was erroneous, and that it tainted the jury's consideration of the remaining charges. *See id.* We pointed out that

> there is nothing in the record to indicate that, in acquitting appellant of attempted armed carjacking, the jury was somehow improperly influenced in its verdict as to the murder conviction. To the contrary, the jury's disposition of the carjacking charge suggests that it carefully considered the evidence and the judge's instructions as to the law. Further, the evidence with regard to the carjacking and murder charges was precisely the same. Therefore, this is not a case in which the jury was prejudiced by hearing evidence that it otherwise would not have heard, but for the

court's decision to permit the carjacking case to go to the jury.

*Id.* at 654, 720 A.2d 27. *See also Comi v. State*, 26 Md.App. 511, 338 A.2d 918 (1975) (although trial court erred in submitting particular charge of receiving stolen goods to the jury, error was corrected by the jury verdict of acquittal as to that count and did not affect the remaining counts).

The above reasoning applies in the present case, in which the same evidence served to support the attempted murder and assault counts. The murder counts were not dead—appellant had not been acquitted of them previously. Furthermore, the jury was instructed that "each question must be considered separately and you must return a separate verdict as to each question, as to each charge." In fact, in response to a written question by the jury, the jurors were asked to reenter the courtroom and were again instructed, "You must consider each charge separately and return a separate verdict as to each charge." Having again received this instruction, the jury rendered its verdict on the same day, without further questions. We presume the jury heeded the court's instructions. Finally, there is no evidence that the jury was improperly influenced by the murder counts; instead, as in *Braxton*, the jury's acquittal on certain counts evinces careful consideration of the evidence and instructions on the law.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**