NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JONATHON RHEA HART, | Court of Appeals No. A-12077 |
| Appellant, | Trial Court No. 1KE-13-897 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2548 — April 14, 2017 |

Appeal from the Superior Court, First Judicial District, Ketchikan, Trevor Stephens and William B. Carey, Judges.

Appearances: Evan Chyun, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Coats, Senior Judge.[*]

Senior Judge COATS.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Jonathon Rhea Hart was convicted of one count of second-degree misconduct involving a controlled substance and one count of third-degree misconduct involving a controlled substance.[1] Prior to trial, Hart moved to suppress evidence seized pursuant to a search warrant, alleging that the warrant was issued based on information that did not satisfy the *Aguilar/Spinelli* test for probable cause. Hart argued, among other claims, that the court issuing the warrant should have rejected the statements that two drug dealers made to a police informant as too unreliable to support the warrant. After a hearing, the superior court denied the suppression motion.

On appeal, Hart first contends that this Court should review de novo the district court's decision to issue the search warrant, with no deference to the issuing judge's decision. This proposed standard of review is inconsistent with the rule established by our supreme court in *State v. Koen*, 152 P.3d 1148 (Alaska 2007), so we reject Hart's contention.

Hart also claims that the superior court erred when it denied his challenge to the search warrant. For the reasons explained in this opinion, we conclude that the evidence presented to the magistrate who issued the warrant satisfied the *Aguilar/Spinelli* test. In particular, we hold that the magistrate could reasonably rely on statements that two drug dealers made to a reliable police informant when the drug dealers were not aware that the person they were speaking to was a police informant, and that their statements would be provided to the police.

---

[1] Former AS 11.71.020(a)(1) (2014) (possession of heroin with intent to deliver) and former AS 11.71.030(a)(1) (2014) (possession of methamphetamine with intent to deliver), respectively.

*The proper standard of review*

As we just noted, Hart argues that this Court should review the sufficiency of the warrant application in this case with no deference to the decision of the judge who issued the warrant. Hart asserts that, because he does not contest the assertions of fact supporting the warrant application, the sole remaining issue — whether those facts support a finding of probable cause — is a question of law that should be reviewed de novo, giving no deference to the decision of the issuing judge.

Hart is correct that, ultimately, an appellate court exercises independent review in assessing whether a warrant is supported by probable cause. But the Alaska Supreme Court has directed us to give "great deference" to the magistrate's decision to issue a warrant. Here is how the supreme court explained the standard of review in *State v. Koen*:

> Questions concerning the existence of probable cause ultimately present issues of law, which we review independently. But when such questions involve a magistrate's decision to issue a warrant, we begin by recognizing that magistrates have broad latitude to draw reasonable inferences from the evidence placed before them. Accordingly, we give "great deference" to the magistrate's discretion and resolve marginal cases in keeping with the traditional preference accorded to warrants. Our inquiry focuses on whether the magistrate had a substantial basis to conclude that probable cause to search existed. In applying this standard, we must read the affidavit submitted in support of the search warrant "in a commonsense and realistic fashion," considering the affidavit "in its entirety" instead of dissecting it into isolated "bits and pieces of information."

*Koen*, 152 P.3d at 1151 (internal citations omitted).

Accordingly, this is the standard that we apply.

*The warrant was supported by probable cause*

In December 2013, Ketchikan Police Sergeant Andrew Berntson applied for and received a warrant to enter and search the vacation rental where Hart was staying in Ketchikan.  Berntson personally testified in support of the warrant application, but most of his testimony was based on information obtained from other sources.  These sources were (1) a citizen informant named Adam Archibald, (2) a reliable police informant named Aaron McColley, and (3) information that McColley obtained from his conversations with two local drug dealers, James Doe and Jane Roe.  (These are pseudonyms.)

When the police executed the search warrant the next day, they found heroin and methamphetamine, packages of syringes, a digital scale, a straw scoop, a package of balloons, cash, and other drug-related items in Hart's vacation rental.  The charges against Hart were based on this evidence.

Probable cause to issue a search warrant exists when "reliable information is set forth in sufficient detail to warrant a reasonably prudent [person] in believing that a crime has been or was being committed."[2]

Hart contends that the warrant was not supported by probable cause because the State did not establish that the two drug dealers, James Doe and Jane Roe, were credible and reliable sources of information under the *Aguilar/Spinelli* test.

Under the *Aguilar/Spinelli* test, "[w]hen a search warrant application rests on hearsay information, the government must establish (1) that each of its hearsay

---

[2]    *Van Buren v. State*, 823 P.2d 1258, 1261-62 (Alaska App. 1992) (citing *Badoino v. State*, 785 P.2d 39, 41 (Alaska App. 1990) (quoting *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973))).

informants is generally a credible source of information, and (2) that each informant obtained their present information in a reliable way."[3]

When Sergeant Berntson applied for the warrant in this case, he testified that he was working with a police informant, Aaron McColley. McColley had earlier been arrested for possession and sale of heroin, and he had agreed to cooperate with the police in other investigations. In this capacity as an informant, McColley had provided reliable information to the police about other cases. Hart concedes that the search warrant application established that McColley was a credible source of information under the *Aguilar/Spinelli* test. But Hart disputes whether the information that McColley relayed from James Doe and Jane Roe was reliable.

According to the search warrant application, McColley told Sergeant Berntson that Jane Roe, a woman who sold drugs in Ketchikan, had obtained drugs from a man named "Jon" who came to Ketchikan from "down South." This person was allegedly bringing into Ketchikan a higher grade of heroin than was normally available in town. Berntson had not previously seen this type of heroin, called China white, in Ketchikan.

McColley had personally met this out-of-town dealer "Jon," and McColley provided Berntson with a fairly detailed description of him. McColley also said that James Doe, a friend of McColley, was "a good contact with this man, Jon, and [with] Jane Roe." McColley said that James Doe sold "gram quantities" for Jon. Berntson independently knew that James Doe was part of a group of Ketchikan locals who were "really into heroin."

---

[3] *Wilson v. State*, 82 P.3d 783, 783 (Alaska App. 2003). *See State v. Jones*, 706 P.2d 317, 320, 324-25 (Alaska 1985); *Davis v. State*, 499 P.2d 1025, 1029 (Alaska 1972), *overruled on other grounds*, 415 U.S. 308 (1974).

On November 25, McColley texted a license plate number to Berntson. McColley said that he had seen the out-of-state dealer "Jon" driving a vehicle with this license plate number. Berntson determined through his own investigation that the vehicle was owned by a local woman. Police searched the woman's house about a week later and found illegal drugs.

A few days after McColley told Bernston about the car, he shared more information with Bernston. McColley told Berntson that James Doe had told him that the out-of-town dealer named Jon "had gone South for the time being and would be returning with a large amount of heroin," some of which would be China white.

About two weeks later, McColley participated in a police-recorded, controlled drug buy from Jane Roe. During that drug buy, McColley told Jane Roe that he thought he could get a better price from another dealer in town. Jane Roe responded that she knew who McColley was talking about. When McColley said, "[James Doe's] guy?" Jane Roe responded, "yes." According to Jane Roe, that dealer had just gotten back to town. She said she had tried the heroin he was selling as China white and the heroin was no good.

Hart argues that, although McColley might be credible, there was no reason to believe that the statements that McColley relayed from James Doe and Jane Roe were reliable. But in *State v. Malkin*, this Court recognized that "[i]n certain circumstances, admissions of crime carry their own indicia of credibility, sufficient to support a finding of probable cause."[4]

In *Malkin*, we noted that Professor LaFave had stated that when a "secondary source" has "no way of knowing his information would eventually arrive at

---

[4] 678 P.2d 1356, 1359 (Alaska App. 1984), *rev'd on other grounds*, 722 P.2d 943 (Alaska 1986).

police headquarters" and was merely "relating an occurrence to a friend," then a court could find that this source "had no motive to lie and his information was conveyed in circumstances consistent with its reliability."[5]  Professor LaFave explains that "as a general proposition there is more reason to rely upon such admissions than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk."[6]

Other courts have agreed with Professor LaFave.  *See, e.g.*, *Comi v. State*, 338 A.2d 918, 922 (Md. Ct. Spec. App. 1975) (where the "secondary source" "had no way of knowing that his information would eventually arrive at police headquarters" and was merely "relating an occurrence to a friend [a court could find that this source] had no motive to lie and his information was conveyed in circumstances consistent with its reliability."); *State v. Romero*, 765 N.W.2d 756, 769 (Wis. 2009) (finding a secondary source reliable because the source's "unwitting participation in a police sting [served] to bolster his credibility"); *State v. Gunwall*, 720 P.2d 808, 818 (Wash. 1986) (en banc) (secondary source did not know she was speaking to an undercover police officer, thus had no reason to lie when she made statements against her penal interest).

Additionally Professor LaFave has explained that generally it is unlikely that false information is exchanged when a reliable informant reports a drug seller's discussion with a drug buyer as to when drugs will be available for purchase.[7]

---

[5]    678 P.2d at 1359 n.4 (quoting 1 Wayne R. LaFave, *Search and Seizure* § 3.3(c), at 530 (1978) (footnotes omitted) (quoting *Comi v. State*, 338 A.2d 918, 922 (Md. Ct. Spec. App. 1975))).

[6]    2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(c), at 174 (5th ed. 2012).  *See also Malkin*, 678 P.2d at 1359 n.4.

[7]    2 Wayne R. LaFave, *Search and Seizure:  A Treatise on the Fourth Amendment* § 3.3(c), at 179-80 (5th ed. 2012).  *See Thompson v. State*, 298 A.2d 458, 462 (Md. Ct. Spec.

(continued...)

Here, both James Doe and Jane Roe were secondary sources who were speaking with McColley, a reliable informant. Both Doe and Roe discussed with McColley either that heroin was currently available, or when it would be available, and who was providing the heroin. The judge who issued the warrant could reasonably conclude under these circumstances that Doe and Roe were unaware that their information would be provided to the police.

Consequently, the judge issuing the warrant could reasonably conclude that McColley obtained information from Doe and Roe in a reliable way, and that these two local drug dealers had personal knowledge of their dealings with the out-of-town drug dealer named Jon who was selling China white heroin.

After receiving this information from McColley, Sergeant Berntson was contacted by Adam Archibald, a Ketchikan citizen. Berntson knew Archibald, who was a security officer at the Ketchikan airport. Hart does not contest that Archibald is properly classified as a "citizen informant" and therefore presumed to be credible.[8]

Archibald owned a duplex and rented out the downstairs apartment as a vacation rental. Archibald told Berntson that on December 6 he had received a phone call from a woman asking about renting his apartment. Afterwards, a man who identified himself as "Jon Hart" confirmed the reservation for December 9 through December 19 with an email. When the man and woman arrived, they told Archibald that they were on a "road trip." Archibald thought this was odd because they did not have a vehicle, and Hart claimed to have no credit cards. Because Hart had no credit cards, he arranged to

---

[7]   (...continued)
App. 1973) (explaining that drug dealers have no incentive to mislead their clientele, who they depend on to make a profit).

[8]   *See Duncan v. State*, 178 P.3d 467, 470 (Alaska App. 2008) (quoting *Erickson v. State*, 507 P.2d 508, 517-18 (Alaska 1973)).

pay for the rental in two large cash payments. He provided two different reasons for this arrangement. First he said he was waiting for "a check on a boat." Later he changed his story, claiming he had received the cash from an inheritance.

Archibald provided Berntson a description of Hart. This description was quite similar to the description that McColley had given to Berntson of "Jon," the out-of-town drug dealer. Archibald also identified the vehicle he had seen Hart coming and going in. Berntson knew this vehicle: it was the same vehicle McColley had reported the out-of-town drug dealer had been driving two weeks before.

Archibald also said that Hart always carried a backpack with him, which Berntson explained was common for a person in the drug milieu who carried his drugs with him.

The information that Berntson obtained from Adam Archibald, when coupled with the information he had obtained from the informant McColley, provided a sufficient basis for the district court to conclude that the Jon Hart who was renting the apartment from Adam Archibald was the "Jon" who had recently arrived in town and was supplying heroin to local dealers James Doe and Jane Roe. Therefore, there was probable cause to believe that the evidence of this crime would be found in the apartment. We conclude that the warrant was supported by probable cause.

*Conclusion*

The judgment of the superior court is AFFIRMED.