909 A.2d 1112

**Lorinda Ann BROADWATER**

v.

**STATE of Maryland.**

**No. 0215, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Oct. 27, 2006.

298

Amy E. Brennan (Nancy S. Forster, Public Defender on the brief), Baltimore, for appellant.

M. Jennifer Landis (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before DAVIS, KENNEY, CHARLES E. MOYLAN, JR., (retired, specially assigned), JJ.

MOYLAN, J.

Ironically, it is immeasurably easier to waive a fundamental protection of the United States Constitution than it is to waive a provision of the Maryland Rules. The latter, after all, are "precise rubrics.. that are to be read and followed," *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 570, 270 A.2d 476 (1970), whereas the former are but the "majestic ambiguities"[1] written for the ages. An especially intimidating specimen of those "precise rubrics" are the three densely packed pages of Maryland Rule 4–215, dealing with the waiver of the right to counsel. They are stern directives far more unforgiving than the Sixth Amendment's right to the assistance of counsel itself. We must examine Rule 4–215 under a microscope.[2]

---

1. Justice Robert Jackson's characterization of the basic provisions of the Bill of Rights.

2. It was *Parren v. State*, 309 Md. 260, 523 A.2d 597 (1987), that set the tone for interpreting Rule 4–215. The battle between strict compliance

### The Present Contention

The appellant, Lorinda Ann Broadwater, was convicted by a Frederick County jury, presided over by Judge John H. Tisdale, of 1) driving under the influence of alcohol, 2) driving while impaired by alcohol, 3) negligent driving, and 4) failing to illuminate headlights. She raises the contention that Judge Tisdale erroneously required her to represent herself at trial after erroneously determining that she had waived her right to counsel by inaction.

Because of the limited nature of her single contention, we are only concerned with the issue of the waiver of counsel by inaction in the circuit court. That particular waiver modality is governed by Maryland Rule 4–215(d), which provides in pertinent part:

(d) **Waiver by inaction—Circuit court.** *If a defendant appears in circuit court without counsel on the date set for* hearing or *trial,* indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the

---

and substantial compliance was squarely joined, as Judge Orth wrote for the four-judge majority:

> We remain satisfied that to protect the fundamental rights involved, to secure simplicity in procedure, and to promote fairness in administration, *the requirements of Rule 4–215 are to be construed as mandatory. . . .*
>
> The State acknowledges that "[t]his Court has always held that *the requirements of the Rule pertaining to a waiver of counsel are mandatory . . . ."*

309 Md. at 280 (emphasis supplied). Speaking also for Chief Judge Murphy and Judge McAuliffe, Judge Rodowsky responded with a high octane dissent:

> *There is an overtone of righteousness to the majority position.* The law-giver has spoken but the mandate has been broken. Someone must be punished. Here the majority punishes the taxpayers of Baltimore City who must bear the expense of a retrial, *the purpose of* which *is not to vindicate the constitutional rights of the petitioners but to vindicate Rule 4–215 which today takes on a sanctity all of its own.*

309 Md. at 301 (emphasis supplied).

Building on the majority opinion in *Parren, Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995), held that a violation of Rule 4–215 may never be harmless error.

defendant demanded a jury trial, *the court shall permit the defendant to explain the appearance without counsel. . . . If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel* by failing or refusing to obtain counsel *and may proceed with the hearing or trial.*

(Emphasis supplied).

On February 14, 2005, the appellant appeared before Judge Tisdale on her third appointed trial date without counsel. The following colloquy ensued:

[ASSISTANT STATE'S ATTORNEY]: Your Honor, it's my understanding that Ms. Broadwater is going to be entering a not guilty plea today, and the State is ready to proceed with trial.

THE COURT: All right, and, *Ms. Broadwater, you were advised of your right to an attorney. I see you're here without an attorney.*

THE DEFENDANT: Yes.

THE COURT: *Have you made efforts to retain an attorney?*

THE DEFENDANT: I did once I got discovery from the State, and what wasn't in there was the original signed statement of probable cause, and the story that the—the paper that they gave me is significantly different than my signed statement of probable cause, so *I tried to figure out how I was going to work that until February 1, where I called the Public Defender and they said I would have had to be in there the day before,* so I'm defending myself. I have questions (indiscernible).

THE COURT: All right. Well *when you were before Judge Adams back in November, she advised you then of your right to an attorney?*

THE DEFENDANT: *Yes.* I'm still okay.

THE COURT: *So you had from November 8. Actually, you had from the time you were in district court—*

THE DEFENDANT: *Um-hmm.*

THE COURT: But *you certainly had that time. I find under the circumstances that you've waived your right to an attorney.*

(Emphasis supplied).

The appellant now claims that that finding of waiver by inaction was in error. It behooves us to look closely at Rule 4–215.

### Maryland Rule 4–215

Rule 4–215 consists of five provisions. The latter four of those set out four separate modalities by which the assistance of counsel may be waived: 1) the express waiver of counsel, pursuant to § 4–215(b); 2) the waiver of counsel by inaction in the District Court, pursuant to § 4–215(c); 3) the waiver of counsel by inaction in the circuit court, pursuant to § 4–215(d); and 4) the waiver of counsel by the discharge of counsel, pursuant to § 4–215(e). Each of those four waiver modalities shares with the others the threshold requirement that the waiver will not be deemed effective unless the defendant has received a series of advisements (or inquiries) listed in § 4–215(a). *Johnson v. State,* 355 Md. 420, 446, 735 A.2d 1003 (1999). The satisfaction of § 4–215(a) is a common denominator prerequisite for effective waiver under any of the waiver modalities. Rule 2–415(a) provides:

(a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or *when the defendant appears in the District Court without counsel, demands a jury trial,* and the record does not disclose prior compliance with this section by a judge, *the court shall:*

(1) *Make certain that the defendant has received a copy of the charging document* containing notice as to the right to counsel.

(2) *Inform the defendant of the right to counsel and of the importance of assistance of counsel.*

(3) *Advise the defendant of the nature of the charges* in the charging document, *and the allowable penalties*, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

(Emphasis supplied).

Turning our attention to Rule 4–215(a), procedurally there are two venues wherein it may be satisfied: 1) the circuit court or 2) the District Court if the District Court has jurisdiction to try the case.[3] Substantively, the rule sets out three requirements that must always be satisfied and two possibly additional contingent requirements that sometimes apply but sometimes do not.

■ If, for instance, the defendant does not "indicate a desire to waive counsel," requirement # 4 does not apply. *McCracken v. State*, 150 Md.App. 330, 353 n. 4, 820 A.2d 593 (2003) ("Rule 4–215(a)(4) requires the court to conduct a waiver inquiry pursuant to subsection (b) if the defendant indicates a desire to waive counsel. Because appellant never indicated such a desire, the court was relieved of satisfying subsection (a)(4)."). Subsection 4–215(a)(4), moreover, is redundant to subsection 4–215(b) itself, and does not really serve any independent function. Because this case involves a waiver by inaction pursuant to Rule 4–215(d) rather than an express

---

**3.** It was the last amendment to Rule 4–215, effective on July 1, 1991, that first made it possible for "a circuit court judge to rely on the advice of the right to counsel previously given to a defendant by a District Court judge when the defendant requests a jury trial." *Richardson v. State*, 381 Md. 348, 364–65, 849 A.2d 487 (2004); *McCracken v. State*, 150 Md.App. 330, 354–55, 820 A.2d 593 (2003); *Smith v. State*, 88 Md.App. 32, 43, 591 A.2d 902 (1991).

waiver pursuant to Rule 4–215(b), requirement # 4 would never apply in any event and will not be further discussed in this opinion.[4]

■ If, for instance, the trial is to proceed immediately rather than "to be conducted on a subsequent date," requirement # 5 does not apply. *Gregg v. State*, 377 Md. 515, 554, 833 A.2d 1040 (2003) ("Gregg was found effectively to have waived his right to counsel on the same day that he was tried, thereby eliminating the need for the part (5) advisement.").

■ With respect to the three absolute requirements, the first is, essentially, the court's confirmation that someone delivered to the defendant "a copy of the charging document containing notice as to the right to counsel." The second and third requirements, concerning, respectively, 1) "the right to counsel" and "the importance of assistance of counsel" and 2) the nature of the charges" and the "allowable penalties," are actual advisements that must be made by the judge personally to the defendant on the face of the record. Some appreciation of the different natures of these three (or four or five) requirements will make an application of a sometimes overly generalized caselaw more sensitively possible.

## A Traffic Violation

## Eight Months Earlier

The traffic infractions of which the appellant was convicted on February 14, 2005, occurred eight months earlier, on June 25, 2004. At approximately 2:00 a.m. on that morning, Montgomery County Police Officer James Geary was driving northbound on Route 15, returning from duty to his home in

---

**4.** In the course of discussing a different issue, *Johnson v. State*, 355 Md. 420, 455, 735 A.2d 1003 (1999), did, to be sure, observe in passing that "the rule requires compliance with all five advisements." That is simply not accurate. To begin with, of course, only three of Rule 4–215(a)'s five requirements are actually advisements. More to the point, Rule 4–215(a) sometimes demands the satisfaction of only four requirements, and sometimes of only three. Imprecise *dicta* can be very misleading.

Frederick County, when he observed a car coming directly toward him in his lane of traffic. The oncoming car did not have its headlights illuminated. Officer Geary swerved to the right to avoid a head-on collision. Calling for assistance from Frederick County law enforcement personnel, he executed a U-turn and followed the suspect vehicle. He observed the errant vehicle narrowly missing other cars in oncoming traffic, as its headlights flickered on and off.

When the car eventually pulled into a parking lot at a townhouse development, Office Geary identified its driver as the appellant. She admitted to Officer Geary that she had been drinking at a bar on Route 15 near the Airport Inn. Within minutes, Frederick County Deputy Sheriff Chris Schreiner also arrived on the scene. He observed that the appellant's eyes were watery and bloodshot, and he detected the odor of alcohol coming from her vehicle. When Deputy Schreiner attempted to administer standard field sobriety tests, the appellant had trouble keeping her balance and could not perform the tests as instructed. She admitted to Deputy Schreiner that she had had two Budweiser beers and two White Russian cocktails. She declined to take a breath test for alcohol. She testified that Deputy Schreiner had, however, requested her to submit to a preliminary breath test, which showed a breath alcohol content of .19.

### The District Court Appearance

All four charges against the appellant were for offenses over which the District Court and the circuit court had concurrent jurisdiction. All charges were initially scheduled for trial in the District Court and were only removed to the circuit court when the appellant requested a jury trial.

The appellant had initially been charged on June 23, 2004. She appeared before a District Court Commissioner on June 25, where she received a copy of, and signed a receipt for, both the charging document and a Notice of Advice of Right to Counsel. The appellant appeared before District Court Judge Janice R. Ambrose for her scheduled trial on September 21, 2004. Judge Ambrose fully advised the appellant of the

nature of and the possible penalties for each of the four charges. She also established 1) that the appellant had received a copy of the charging document and 2) that the appellant did not wish to waive her right to an attorney.

JUDGE: Ms. Broadwater, you're charged with negligent driving, failure to display lighted lamps. Those are payable offenses. Each with a maximum penalty of a Five Hundred Dollar fine. One count of driving or attempting to drive a vehicle [while under the influence of] alcohol and one count of driving or attempting to drive while impaired by alcohol. The alcohol offenses: one is a Five Hundred Dollar fine and/or sixty days and the other one is a Thousand Dollar fine and/or one year in jail. Did you receive copies of those charges?

MS. BROADWATER: I received copies of it, yes. I did need more time.

JUDGE: And you're here without a lawyer, Ms. Broadwater. Do you wish to perform without one?

MS. BROADWATER: Absolutely not. I do need more time because it's not the lawyer fee but I do—I'm trying to get a polygraph done to bring in as evidence and those things take time and I've only had three months.

The State, however, had its witnesses present and wished to proceed with the trial as scheduled. Judge Ambrose indicated that she was prepared to go forward with the trial.

JUDGE: What's the State's position?

STATE'S ATTORNEY: The State has two witnesses and we're ready to proceed today.

JUDGE: Well, Ms. Broadwater, what have you been doing for the last three months?

MS. BROADWATER: Uh, let's see, so far I've lost my house. I'm living out of my car. Oh, here—

JUDGE: Ms. Broadwater, when you were charged back on June 23rd, you were advised by the Court Commissioner about your right to have a lawyer. Do you recall that?

MS. BROADWATER: Yes. And I did contact one and I picked one to hire. But when my—

JUDGE: I'm not continuing your case, ma'am.

MS. BROADWATER: Okay.

When Judge Ambrose advised the appellant of her right to a jury trial, however, the appellant seized the opportunity.

JUDGE: You have the absolute right to have a jury trial if you want one.

MS. BROADWATER: Yes, I want a jury trial.

JUDGE: I can't keep you here in District Court if you want to have a jury trial.

MS. BROADWATER: Okay.

JUDGE: Come see the Clerk. Your case is going to be sent to the Circuit Court.

## The District Court Appearance

### And the Assessment of Rule 4–215(a)

In assessing the adequacy of the appellant's September 21, 2004 appearance in the District Court in terms of subsequently looking back to it for the satisfaction of Rule 4–215(a), we note initially that there were only three requirements, not five, that needed to be satisfied. The appellant expressly disclaimed any "desire to waive counsel." Conditional requirement # 4, therefore, did not apply. The trial was not "to be conducted on a subsequent date" but was proceeding to trial on that very date, September 21, 2004. Conditional requirement # 5, therefore, did not apply. Our focus will be confined to the three remaining requirements.

Judge Ambrose clearly determined that the appellant had received a copy of the charging document, thereby satisfying requirement # 1. Judge Ambrose further informed the appellant as to "the nature of the charges" and the "allowable penalties," thereby satisfying requirement # 3. Judge Ambrose, however, did not satisfy requirement # 2, that of "inform[ing] the defendant of the right to counsel and of the importance of assistance of counsel."

Because of that failure to satisfy requirement # 2, the September 21, 2004, appearance of the appellant in the District Court cannot, in and of itself, be deemed sufficient to have satisfied Rule 4–215(a). It remains to be seen, however, whether that initial appearance might have some supplemental utility in combination with later advisements on subsequent occasions.

### Circuit Court Appearance on October 8, 2004

After praying a jury trial in District Court on September 21, 2004, the appellant then appeared in circuit court before Judge Tisdale on October 8. Judge Tisdale informed the appellant that a trial date had been set for her one month later, on November 8. He meanwhile inquired as to her efforts to secure an attorney.

THE COURT: Okay. You have a trial date set for the 8th of November. Now, *have you made any efforts to retain an attorney?*

THE DEFENDANT: I wanted to make sure it would go to a jury trial.

THE COURT: *That's fine, but have you made any efforts to retain an attorney?*

THE DEFENDANT: I did go one time to the public defender after the circuit court date that I had. I'm sorry, I have fibromyalgia, it's a little hard sometimes. I did go there. They said in order for them to help me, they needed a paper saying somebody was supporting me, and basically for months I've been going from place to place, different friends' houses. I haven't been home in about three months, as if they mailed anything, I wouldn't have gotten it.

(Emphasis supplied).

Because the trial was not to be held on October 8 but was "to be conducted on a subsequent date," November 8, requirement # 5 was added to the prescribed Rule 4–215(a) catechism, alerting the defendant that if she subsequently "appears for trial without counsel," she could be deemed to have "waived counsel" by inaction and could be forced to "proceed

to trial ... unrepresented by counsel." Judge Tisdale satisfied requirement # 5 to a fare-thee-well.

THE COURT: Well, Ms. Broadwater, let's just get down to brass tacks, okay? I'm not your friend, I'm not your enemy either, all right? There are just some facts of life that exist. Now, *you have a trial date of the 8th of November at 9 a.m.* Now, I'm going to tell you the whole nine yards, but *let me just be very clear. If you come to court on that date without an attorney, you probably won't be granted a continuance to retain one,* okay? Now, I—it's a lot easier for me to sit up here and say those things than it is to make it happen, but that's beside the point, okay? *The Court's a big ole machine and it's going to continue to run. It's your responsibility.* ... As I told you, *if you come to court on the 8th of November without an attorney, you likely won't be granted a continuance to retain one.* Now, *I know you've heard this same advice on a number of occasions,* and *a judge is going to look at this file and say, well, we've told her and told her,* okay?

(Emphasis supplied). So much for requirement # 5.

With respect to requirement # 2, Judge Tisdale also informed the appellant with respect to both her "right to counsel and of the importance of assistance of counsel."

*[Y]ou have a right to an attorney.* If you can't afford to retain an attorney who is in private practice, *you may be eligible for representation by an attorney with the Office of the Public Defender.* Now, they need at least four weeks, which is what you've got left, to process the whole thing, so *I would do whatever it takes today to get started on that process.* Certainly, you don't have to go there. You may be able to retain an attorney who is in private practice. . . . *An attorney can assist you by evaluating the charges and the facts of the case and advising you how to proceed in connected court proceedings on your behalf.*

(Emphasis supplied).

Turning to requirement # 3, the advisement of "the nature of the charges" and "the allowable penalties," Judge Tisdale advised:

Understand that if you're found guilty, you could be sentenced to up to one year at the local detention center and a fine of up to $1,000, so you have a right to an attorney.

That, of course, was with respect to the flagship count of driving while under the influence of alcohol with its maximum penalty of a year in jail and a $1,000 fine.[5] The merged conviction for the lesser included offense of driving while impaired carried a lesser maximum penalty of 60 days in jail and a $500 fine. The charges of negligent driving and the failure to display lighted headlamps carried no jail time and $500 fines. Because the purpose of the advisement is to impress upon the defendant the importance of the assistance of counsel, we believe that advising the defendant of the maximum penalty she was facing satisfied requirement # 3.[6]

Requirement # 1 is not an advisement at all but simply a reassurance of the court that the defendant has received a copy of the charging document. That assurance had earlier been obtained by Judge Ambrose in the District Court on September 21, 2004.

---

**5.** The advisement as to the allowable penalty, albeit not prolix, was as full as the advisement as to the value of counsel which we held to have been adequate in *Webb v. State,* 144 Md.App. 729, 746, 800 A.2d 42 (2002):

> With respect to subsection (a)(2), *appellant argues that "the importance of assistance of counsel" was not explained in any meaningful way.* Appellant cites no authority in support of his argument, and we are not aware of any appellate decisions elaborating on the express language of subsection (a)(2). As previously noted, we have ample authority stating that strict compliance is required. *The court,* on March 14, *stated on the record that "a lawyer can be very helpful . . . in preparing information for the Court to consider."* In our view, *that is tantamount to advising that the assistance of counsel is important and, therefore, constitutes strict compliance with subsection (a)(2).* (Emphasis supplied).

**6.** Judge Tisdale merged the conviction for driving while impaired into the conviction for driving under the influence and imposed no separate penalty. For the negligent driving and failure to illuminate headlights convictions, Judge Tisdale imposed fines of $100 for each offense. On the flagship charge, he sentenced the appellant to a jail term of six months but suspended all but 30 days. He also imposed a fine of $750.

## Circuit Court Appearance on November 8, 2004

The appellant's circuit court trial was first scheduled for November 8, 2004. When she appeared that day before Judge Theresa M. Adams, she still did not have an attorney. Because of another scheduled jury trial, however, Judge Adams gave the appellant yet another opportunity to get a lawyer. Judge Adams also reiterated the importance of the assistance of counsel.

THE COURT: I'm going to continue your case, but that will give you a chance to think about whether you want a lawyer. Do you understand?

THE DEFENDANT: Thank you.

THE COURT: Now, I'm going to tell you again what the judge already told you in October. *You have the right to hire a lawyer of your own choosing.* You have the right to represent yourself, you can do that, if you want, but *a lawyer can be helpful to you and could be helpful to you not only in the trial, but also in presenting information to the Court in mitigation,* okay, *to help you with,* if you were *found guilty, what the sentencing may be, to help you with any issues a lawyer might think are appropriate,* so that— *a lawyer could help you.* If you do not, cannot afford a lawyer, you can go to the Office of the Public Defender. If you qualify for their services, they will provide a lawyer for you. If you don't qualify for their services, they won't, and you'll have to decide if you want to hire one or make other arrangements with a lawyer. *So I'm telling you that one more time so that when this case comes back here, the record is going to reflect you were advised of your right to a lawyer once again, and if you come back without a layer, the judge could find that you have waived your right to be represented by counsel,* by a lawyer. *Do you understand that,* Ms. Broadwater?

THE DEFENDANT: *Yes, ma'am.*

(Emphasis supplied). Rule 4–215(a)(5) was thus fully satisfied on both October 8 and November 8. There was nothing

confusing about it on either occasion. The warning was loud and clear.

Judge Adams set the next trial date for January 24, 2005. On January 24, the appellant requested a continuance because she was awaiting some discovery by the State. Judge G. Edward Dwyer granted her a continuance until February 14. He did not burden her with any additional advisements, and January 24 has nothing to contribute to our analysis.

### The Satisfaction of Subsection (a)

The appellant does not contend that all of the advisements and inquiries mandated by Rule 4–215(a) were not adequately satisfied at one time or another. She acknowledged that requirement # 1 had been satisfied by District Court Judge Ambrose on September 21, 2004. "[T]he court confirmed that Ms. Broadwater had received a copy of her charging document as *required by Rule 4–215(a)(1)*." (Emphasis supplied). She acknowledged that requirement # 2 had been satisfied by Judge Tisdale on October 8, 2004. "The court informed Ms. Broadwater that she had a right to counsel and explained the importance of counsel, *satisfying Rule 4–215(a)(2)*." (Emphasis supplied). For good measure, the appellant acknowledged that requirement # 2 had also been satisfied by Judge Adams on November 8, 2004. "*Judge Adams did comply with Rule 4–215(a)(2)*." (Emphasis supplied). The appellant acknowledged that requirement # 3 had been satisfied by Judge Ambrose on September 21, 2004. "*[T]he court ... informed* Ms. Broadwater of the nature of the charges and the maximum penalties *as required by Rule 4–215(a)(3)*." (Emphasis supplied).

This case involves a waiver by inaction pursuant to Rule 4–215(d) and not an express waiver pursuant to Rule 4–215(b). Rule 4–215(a)'s contingent requirement # 4 accordingly does not apply, and, therefore, did not need to be satisfied.

With respect to contingent requirement # 5, the appellant's circuit court appearance on October 8, 2005, was not a scheduled trial date but one where "trial [was] to be conducted on a

subsequent date." Requirement #5 was applicable, therefore, on October 8. The appellant acknowledged that Judge Tisdale satisfied it on that date. "The court . . . warned Ms. Broadwater that if she appeared at her next court date without a lawyer the court could conclude that she waived her right to counsel and require her to proceed to trial without a lawyer, *satisfying (a)(5).*" Simply by way of gilding the lily, the appellant also acknowledged that Judge Adams again satisfied requirement #5 on November 8, 2004, when the trial that had been scheduled could not go forward. "*Judge Adams did comply with Rule . . . (a)(5)* (advise the defendant that if she appears at trial on her next date unrepresented, the court may conclude that she has waived her right to counsel and require that she represent herself)." (Emphasis supplied).

After acknowledging that requirement #1 had been satisfied, requirement #2 had been satisfied twice, requirement #3 had been satisfied, contingent requirement #4 was inapplicable, and contingent requirement #5 had been satisfied twice, what then does the appellant complain of?

## The Appellant's Argument

The appellant complains that there was never an omnibus hearing at which all of Rule 4–215(a)'s required inquiries and advisements were all wrapped up in a single package. She alleges reversible error in that she "was advised of her right to counsel in a piecemeal manner over the course of several different court appearances." She lists one District Court and three circuit court appearances and complains that the "requirements of Maryland Rule 4–215(a)(1)–(5) were not satisfied at any one of those hearings." She concludes: "The advice required by Rule 4–215(a) was not provided to [her] point by point, by one judge, at one proceeding. Therefore the Rule was not satisfied." [7]

---

7. Even if we were to assume, purely *arguendo*, that District Court Judge Ambrose had fully satisfied absolute requirements 1, 2, and 3 on September 21, 2004, but that the appellant's subsequent circuit court arraignment of October 8, 2004, necessitated Judge Tisdale's giving the warning mandated by contingent requirement #5, would that late

Even poring over every line of Rule 4–215 literally and even insisting upon strict compliance with every provision, we cannot find anywhere in the wording of the rule itself a requirement for a single omnibus hearing at which a single judge on a single occasion satisfies each and every one of Rule 4–215(a)'s requirements. To that end, however, the appellant cites two sentences of *dicta* from *Johnson v. State*, 355 Md. 420, 461, 735 A.2d 1003 (1999), as if that passage were the established and authoritative law of Maryland. It is not.

We conclude that to avoid confusion on the part of an accused and to protect the fundamental right to counsel, *the subsection (a) advisements must be given* in strict accordance with Md. Rule 4–215, by the correct court and *not piecemeal.* A "knowing and intelligent" waiver of counsel can only occur when there is strict compliance with the rule. (Emphasis supplied).

Although the appellant does not cite it, the immediately preceding paragraph is also part of the *Johnson* passage. *[A]ny Md. Rule 4–215(a)(1)–(5) advisements* that Johnson received *were* inadequate and *given to him in an incomplete manner in different courts by different judges,* all resulting in likely confusion on the part of the defendant. *Nowhere in the record is there evidence that any one circuit court judge went through the section (a) litany with Johnson, point-by-point* as required. . . . For the rule to be an effective constitutional safeguard, it contemplates defendants

---

arrival of an incremental requirement invalidate the earlier satisfaction of requirements 1, 2, and 3 and require that Judge Tisdale repeat the entire exercise? Would not that be the command of the so-called "single package" rule?

If, again *arguendo*, Rule 4–215(a) had initially been fully satisfied in this case but, when the case finally came on for trial on February 14, 2005, the appellant decided, for the first time, expressly to waive counsel, would the required satisfaction of newly applicable contingent requirement # 4 invalidate the earlier satisfaction of Rule 4–215(a) because the belated satisfaction of requirement # 4 would have reduced the satisfaction of the total package to a "piecemeal" status? That would seem to be the end result of the appellant's "single package" logic, and we find no reason to support such a result.

receiving the advisements during their "first appearance in court without counsel."

(Emphasis supplied).

We reject the appellant's argument for two reasons:

1. The *Johnson dicta* does not follow from any thorough analysis. As *dicta*, it is, as a matter of course, not authoritatively binding. It is, at best, persuasive, and we are not persuaded by it.

2. Even if, *arguendo*, the *dicta* contained a glimmer of future truth, it is nonetheless thin and conclusory and would be in dire need of significant fine-tuning. As properly fine-tuned, it would not lead to a reversal in this case.

*Johnson v. State:*

### The Holding Versus the *Dicta*

*Johnson v. State* is itself a thoroughly researched and well reasoned opinion. It well deserves its status as authoritative Maryland law—as far as its holding is concerned. That holding, 355 Md. at 426, 735 A.2d 1003, established that although the District Court is an appropriate forum for satisfying Rule 4–215(a) in a case in which the District Court has jurisdiction to try the case, but when the defendant demands a jury trial, the District Court is not the appropriate forum for satisfaction in a case in which exclusive jurisdiction is in the circuit court and the District Court is simply engaged in the preliminary skirmish of conducting a bail hearing.

[A] circuit court judge with exclusive original jurisdiction may not determine that Johnson waived counsel based on information provided to him at his bail review hearing before a District Court judge. *Because Johnson's charges were not transferred to the circuit court on a jury trial demand, an advisement by a District Court judge, as opposed to a circuit court judge, was not sufficient for strict compliance with Md. Rule 4–215.*

(Emphasis supplied).

The *Johnson* Court then explained the pivotal distinction between being in the District Court for trial and only pausing there for a bail hearing.

*Johnson's offenses brought him within the exclusive original jurisdiction of the circuit court;* therefore, in accordance with the introductory language of both Md. Rule 4–215(a) and (d), Johnson was to be advised of (a)(1) through (5) either when he appeared for the first time in the circuit court without counsel or when he appeared in the District Court without counsel and demanded a jury trial. *Because Johnson never appeared in the District Court without counsel and demanded a jury trial, the rule requires that he be given the section (a) advisements by a circuit court judge.*

355 Md. at 453, 735 A.2d 1003 (emphasis supplied).

In its "Conclusion," Judge Chasanow indicated that the Court of Appeals was responding to the request by the Court of Special Appeals "for further guidance." By way of guidance, he then spelled out precisely what the holding of *Johnson v. State* consisted of:

In the instant case, *a circuit court judge* with exclusive original jurisdiction *may not determine that Johnson waived counsel based on information provided to him at his bail review hearing before a District Court judge.* Johnson's charges were not transferred to the circuit court on a jury trial demand; therefore, an advisement by a District Court judge was not sufficient for full compliance with Md. Rule 4–215. *Strict compliance with the rule required that Johnson receive his subsection (a) advisements from a circuit court judge.*

355 Md. at 464, 735 A.2d 1003 (emphasis supplied).

There is no remote mention there, in that synopsis of the opinion, of any "omnibus hearing" or "single message" requirement embedded in Rule 4–215(a). The decision in *Johnson,* whence a holding must necessarily arise, turned entirely on the distinction, for Rule 4–215(a) purposes, between an initial appearance in the District Court for a possible trial and an appearance in the District Court only for purposes of bail review.

The *Johnson dicta,* by contrast, simply crops up and consists of nothing but the two paragraphs quoted above. It does not proceed from any historical discussion. It does not follow from any detailed analysis of a "single message" communicative psychology as opposed to the frailty of more serial messaging. It appears, moreover, on the 42nd page of a 45–page opinion that deals primarily with a very different subject. Most significantly, the observations in the *dicta* are not in any way important to the actual decision in the case. The holding would not have been affected in any way if the *dicta* had been totally excised from the opinion. Three weeks of law school should teach us that such gratuitous *dicta* does not take on the mantle of binding precedent. Some *dicta,* of course, may turn out to be a harbinger of future change, but it does not, in and of itself, become a part of *stare decisis.*[8]

*Richardson v. State,* 381 Md. 348, 369–70, 849 A.2d 487 (2004), did, to be sure, make reference to the *Johnson dicta,* but the *Richardson* reference itself was only by way of *dicta.* The careful analysis of Judge Harrell in *Gregg v. State,* 377 Md. 515, 554, 833 A.2d 1040 (2003), on the other hand, flatly declared that the permissibility or impermissibility of piecemeal advisements is still a completely open question:

> Because *Johnson* would not countenance such a patchwork of advisements, Gregg argues that he was not properly

---

**8.** This is why it is intellectually irresponsible for attorneys simply to grab a casual sentence or clause from the periphery of an opinion and then run with it as if they had just rediscovered the *Magna Charta.* An attorney who blithely protests, "The Court must have meant 'not piecemeal' or it would not have said 'not piecemeal,' " betrays an utter lack of understanding of both *stare decisis* and the appellate process.

Typically, an appellate court convenes on a monthly basis to approve proposed opinions for publication. At such a conference, the court will consider fifteen or twenty or even more proposed opinions, some of considerable length. The judges, therefore, will have been required to read hundreds and hundreds of proposed pages, sometimes late at night. To suppose that they have lingered and pondered over every passing word or phrase of *dicta* as if they were about to chisel it into marble is a fairy tale. Because of this self-evident truth, the rudiments of legal method constantly stress the critical distinction between a holding and *dicta.* The lesson, sadly, needs regular reiteration.

> advised of his rights pursuant to Rule 4–215. *There is no need to decide whether the combined District Court advisements and the circuit court advisements were sufficient to satisfy Rule 4–215* because the Circuit Court fully advised Petitioner of his rights under 4–215.

(Emphasis supplied). Because it is still an open question whether an advisement from the District Court may combine with other advisements from the circuit court to make a total package, it is, *a fortiori,* still an open question whether advisements from one circuit court appearance may permissibly combine with other advisements from a different circuit court appearance.

The Comment, "Maryland's Rule on Waiver of Counsel By Inaction: Making the Perfect the Enemy of the Good," 64 *Md. L.Rev.* 1376, 1390–91 (2005), confirms not only that the issue of combination is an open question but that the better reading of Rule 4–215 itself strongly suggests that "the mandatory *advisements may be given* by a court *over several appearances.*"

> In interpreting section (a), the Johnson court held that, to be valid, all five mandatory advisements must be given "point-by-point" at one time. *This interpretation,* while reasonable, *is neither explicitly commanded nor manifestly implicit.* Indeed, *an opposite interpretation is equally reasonable* because *the statute suggests that the mandatory advisements may be given by a court over several appearances.* Indeed, Rule 4–215(a) states that *the court shall provide the mandatory advisements if "the record does not disclose prior compliance* with this section by a judge." *This suggests that judges may provide the advisements that their predecessors omitted.*

(Emphasis supplied).

The wording of Rule 4–215 itself, detailed as it is, nowhere states that compliance with subsection (a) demands that there must on some single occasion be a single omnibus message. Subsections (b), (c), (d), and (e), dealing with the four modalities of waiver, contemplate that, at the time of the critical appearances for those respective waivers, there may have

been an earlier compliance with subsection (a). In case there has not been earlier compliance, however, the judge at the later hearing may rectify the situation. Subsection (b) provides: "If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry." Subsection (c) directs that "the court shall ... comply with section (a) of the Rule, if the record does not show prior compliance." Subsection (d) provides that the judge shall only demand of a defendant an explanation for appearing without counsel if "the record shows compliance with section (a) of this Rule." Subsection (e) directs that, before the court may permit a defendant to discharge counsel, the court "shall comply with subsections (a)(1)-(4) of this rule if the docket or file does not reflect prior compliance."

These provisions do not necessarily, or even probably, imply that if the judge on the later appearance of the defendant examines the record of an earlier appearance and finds only partial compliance with subsection (a), that he must then revert to Act One and deliver the entire libretto from the top. Contingent requirement # 4 or contingent requirement # 5, for instance, might well need to be satisfied on some later appearance of a defendant even though neither contingent requirement had been applicable at the time of the defendant's earlier appearance. If, on the later occasion, an examination of the record showed full compliance on the earlier occasion of what subsection (a) had then required, the subsequent judge would clearly not have to reintone that part of the litany. The two appearances, in combination, would satisfy subsection (a).

If, on the occasion of a subsequent appearance by the defendant, the judge were to examine the record of an earlier appearance and discover only partial compliance with subsection (a) but full compliance with (a)(1), in that the court had fully assured itself that the defendant had received a copy of the charging document and the record reflected that assurance, there is no logical reason whatsoever why the second judge should have to repeat (a)(1). This is particularly so because (a)(1) does not involve imparting any information to a

defendant. The recipient of the information pursuant to (a)(1) is the court itself, as it reassures itself that a preceding requirement was actually satisfied. Should a trial judgment be reversed because the court had not assured itself of something twice?

The deep background analysis by Judge James Eyler in *Bowers v. State,* 124 Md.App. 401, 722 A.2d 419 (1999), examined in detail the Minutes of the Maryland Rules Committee of September 10 and 11, 1982, as the Court of Appeals debated the changes that ultimately produced what is now Rule 4–215.

In debating changes to Rule 723 in 1982, as part of the redesignation that would produce substantially the Rule in force today, *the Rules Committee considered the point in time at which the advisement of rights and penalties should be given.*

124 Md.App. at 410, 722 A.2d 419 (emphasis supplied).

The Court of Appeals on that occasion, largely through Judge McAuliffe, sought to reassure itself that the requirements of what is now subsection (a) should be satisfied, to the extent possible, at the defendant's first appearance, so that the judges might more efficiently find a subsequent waiver of counsel.

Judge McAuliffe stated that what worries the court is the defendant who doesn't want to waive his right to counsel but is using the right and the safeguards to abuse the system. The Court needs to be able to find a waiver and curtail these abusive tactics.... Judge McAuliffe reiterated that under current practice, *once the inquiry is properly done and the record so reflects, it does not have to be redone.*

. . . .

Judge McAuliffe commented that protection is afforded the subsequent judge through the State's Attorney's Office. *If the first judge missed something, the State's Attorney will note it and will inform the next judge of the omission so that it can be rectified.* He asserted that if the defendant is fully advised of his rights at his initial appearance without counsel, the trial judge, at the commencement of

the trial, can simply determine if there is a good excuse for the defendant's appearing without a lawyer. Thus, if there is a prior waiver, the court can make sure it sticks where no good excuse dictates otherwise. And where there is no prior waiver, the court can find one by inexcusable inaction.

124 Md.App. at 411, 722 A.2d 419 (emphasis supplied).

To spot an "omission" and to "rectify" it does not contemplate having to repeat everything that was not omitted.

In short, the Rules Committee recommended that the Rule 4–215(a) advisement of rights and penalties be conducted upon a defendant's first appearance in court so that a subsequent judge would have greater power to "curtail ... abusive tactics." *It was contemplated by the Committee that if part of the litany were omitted, the State could point out the problem to a subsequent judge "so that it can be rectified."* Under the other sections of the Rule, the problem would have to be corrected before a waiver or discharge could be found.

124 Md.App. at 412, 722 A.2d 419 (emphasis supplied). All of this was patently not considered when the *Johnson v. State* opinion delivered two paragraphs of *dicta*. This is not to criticize *Johnson*. It is only to admonish counsel not to read too much into *Johnson*.

### Our Rejection of the *Dicta*

■ As the question is now before us as a matter of first impression, it is our determination that the appellant's argument, based on the *Johnson dicta*, is far too simplistic. Rule 4–215 embraces four different waiver modalities. It embraces appearances by a defendant in both District Court and circuit court. It embraces the possibility of multiple circuit court appearances. It sets out, in subsection (a), five separate requirements, three of which always apply but two of which apply only intermittently. Some of those requirements involve imparting information to a defendant, but some do not. There are self-evidently so many permutations and shifting sets of circumstances that to attempt to say, as the *Johnson*

*dicta* inferentially did, that "one rule fits all" would be recklessly ill-advised. There are so many variables that the satisfaction of subsection (a) calls for *ad hoc* determinations on a case-by-case basis.

Accordingly, we hold that the combined salvo of inquiry and information from Judge Ambrose, Judge Tisdale, and Judge Adams on September 21, October 8, and November 8, 2004, fully satisfied the three absolute requirements of Rule 4–215(a)(1), (2), and (3). When contingent requirement # 5 became applicable on October 8, it was fully satisfied by Judge Tisdale. Albeit redundantly, it was again satisfied by Judge Adams on November 8. Contingent requirement # 4 was never applicable in this case.

Subsection (a) having been satisfied, Judge Tisdale was at liberty on February 14, 2005, to consider whether the appellant's appearance without counsel on that day constituted a waiver by inaction pursuant to subsection (d).

### The Inadequacy of the *Dicta,*

### Even As *Dicta*

The *Johnson dicta,* moreover, even if it were to be accepted, *arguendo,* as a rough statement of the law, paints with a dangerously broad brush. The "single message" requirement, on which the appellant relies, comes exclusively out of a couple of paragraphs that make no qualitative distinction between subsection (a)'s three absolute requirements and its two contingent requirements, just as they make no distinction between the function of imparting information to a defendant and that of assuring the court itself that an action by other court personnel has, indeed, been adequately performed. The only reason given in *Johnson's dicta* for not permitting "piecemeal" satisfaction of Rule 4–215(a) is that partial advisements "in different courts by different judges" would result in "likely confusion on the part of the defendant." *Id.*

If that *dicta,* presumably along with its *raison d'etre,* were, indeed, the law, some finer tuning would obviously be required. The rationale of avoiding "confusion on the part of the

defendant" who receives different advisements on different occasions might well argue for treating requirements # 2 and # 3, which are true advisements, as an indivisible package. It would not, however, apply to requirement # 1, by which the court only seeks information about an event (the delivery of a copy of the charging document). The recipient of information pursuant to requirement # 1 is the judge, not the defendant. The requirement is that "the court shall make certain" that the event (the delivery of the charging document) had at some earlier time actually taken place. This is not part of a message being aimed at the defendant, nor are we worried about any confusion on the part of the judge.

A defendant, being advised pursuant to requirements # 2 and # 3, is not going to be confused because he got his copy of the charging document last week instead of this week, nor by the fact that a judge asked about it last week instead of this week. Once the court has established that there has been a proper delivery of the proper document, subsection (a)(1) is a *fait accompli* and can be factored out of any further calculations. Contingent requirements # 4 and # 5, moreover, are even further afield in terms of the purpose of avoiding likely confusion.

### How Not to Read an Appellate Opinion

All of this should serve, once again, to illustrate why relying on casual *dicta* is so inherently treacherous. These distinctions were never addressed, and thus probably not even considered, in *Johnson v. State.* One must not read precedential significance into something that was never decided at all, let alone never deliberately decided as a collegiate holding. In *State v. Wilson,* 106 Md.App. 24, 36–37, 664 A.2d 1, *cert. denied,* 340 Md. 502, 667 A.2d 342 (1995), *rev'd on other grounds, Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), we explained how not to read an appellate opinion.

*The precedential weight of a holding is predicated* in large measure *on its status as the deliberate and considered judgment of an entire collegiate court,* including the opinion

writer, *on the issue before it that must be decided.* Each member of an appellate court peers in with painstaking scrutiny not only on the decision itself but on the framing of the holding that announces the decision. *The articulation of the holding passes through a stern editorial process* that insists that every "i" be dotted, every "t" be crossed, every word be carefully chosen, and every far-flung repercussion be sagely anticipated. *A holding,* therefore, *has earned the authoritative weight we give it.*

The holding, however, consists of no more than a few sentences or, at most, a few paragraphs, generally located near the end of what may be a twenty or thirty-page opinion. *When it comes to the composition of the opinion leading up to the holding, the collegiate editorial reins are,* although not totally relaxed, *far looser.* There is a wide stylistic range within which the opinion writer may freely express a particular legal philosophy; a special analytic approach to problem solving; possibly idiosyncratic reactions to certain arguments; or, above all, an individualistic writing personality. *The active collegiate participation in the formulation of a holding retreats to gentle stylistic suggestion when it comes to the writer's modality of expression.* It is not uncommon for a panel member to subscribe to an opinion, notwithstanding an occasional wince of pain or smile of indulgent tolerance along the way. The point is that *everything said in an opinion—the dicta—is not entitled to the same weight as is the holding of the Court.* (Emphasis supplied).

### Fine–Tuning the *Dicta*

Even if we were to assume, *arguendo,* that the "single message" requirement of the *Johnson dicta* were binding law, we would still have to fine-tune it before applying it to the present case. "Message," we would assume, refers to the sum total of information that must be communicated by the court to the defendant. It is, as we have discussed, requirements # 2 and # 3 and, when applicable, # 5 that actually impart information to a defendant. All three of those advisements

were fully made by Judge Tisdale to the appellant on October 8, 2004. Requirement # 1, as we have discussed, is in a qualitatively different category and would not, we would hold, be subject to the "single message" rule, even if such rule existed.

It would behoove us, of course, to discuss the adequacy of advisement # 3, if we were required to rely for its satisfaction on the appellant's appearance before Judge Tisdale on October 8 rather than upon her appearance before Judge Ambrose on September 21. Judge Ambrose, of course, had spelled out the penalties for each of the four counts against the appellant. Judge Tisdale, on the other hand, confined his advisement to the flagship count of driving under the influence of alcohol.

Understand that if you're found guilty, you could be sentenced to up to one year at the local detention center and a fine of up to $1,000, so you have a right to an attorney.

In the context of Rule 4–215, the purpose of advising the defendant of the possible penalties he is facing (indeed, the purpose of any of the advisements) is to impress upon the defendant the importance and the value of having the assistance of counsel. If any penalty were capable of doing that in this case, it would be the maximum penalty of one year in jail and a $1,000 fine for driving under the influence.

The second charge, driving while impaired, was only a lesser included offense with a maximum penalty of 60 days in jail and a fine of $500. As a lesser included offense, a sentence for it could not be made consecutive to a sentence for driving under the influence. If we were deciding this case, *arguendo,* on the basis of the October 8, 2004 appearance in the circuit court alone, we would not hesitate to hold that Rule 4–215(a)(3) does not compel an advisement as to the "allowable penalties" of each and every lesser included offense. If such advice were compelled as to each and every lesser included offense that was expressly charged, there would be no principled reason why it should not also be compelled with respect to all lesser included offenses that were not expressly charged but on which verdicts could nonetheless be returned. One need only

contemplate the potential count-down from a flagship charge of armed robbery to realize the unfeasibility of any such requirement. It would not only be unfeasible, but it would serve no real purpose.

That leaves for consideration only the charges of 1) negligent driving and 2) failure to illuminate headlights, neither of which carried any risk of incarceration but only fines of up to $500. Although the defendant in *Gregg v. State, supra,* was facing only the single charge of second-degree assault, the advisement as to the penalty which the Court of Appeals held to be adequate was a "bare-bones" advisement:

> COURT: Do you understand the maximum penalty that you face?
>
> GREGG: Yes. Ten years or a bunch of money.
>
> COURT: $2,500.

377 Md. at 549, 833 A.2d 1040.

Even if required to look at the October 8 penalty advisement in a vacuum, we would hold that the advisement as to the maximum penalty for the flagship charge was sufficient to impress on the appellant the need for the assistance of counsel.[9]

### Waiver by Inaction

■ Quite aside from her challenge to the court's satisfaction of Rule 4–215(a), the appellant also claims that Judge Tisdale abused his discretion in finding a waiver of counsel through inaction pursuant to Rule 4–215(d). She pinpoints the

---

9. If we would have been wrong with respect to that hypothetical holding in an *arguendo* setting, that would create an interesting problem. If Rule 4–215(a) were satisfied with respect to the primary charge, on which the appellant was sentenced, but had not been satisfied on a peripheral charge, what would be the ultimate impact of that "mixed bag"? Should the sentence for driving under the influence be affirmed, but the $100 fines be vacated? Would it make any difference if the verdicts had been not guilty on those two lesser charges? If so, might that not be a form of harmless error analysis, which *Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995), has presumably foreclosed? The convolutions of Rule 4–215 are still far from being totally explored.

abuse as Judge Tisdale's implicit finding that there was "no meritorious reason for the defendant's appearances without counsel" on February 14, 2005. We find dispositive Judge James Eyler's conclusion with respect to a similar claim in *Webb v. State,* 144 Md.App. 729, 747, 800 A.2d 42 (2002):

> With respect to section (d), *appellant argues that the court, on June 8, gave "short shrift" to appellant's explanation for appearing without counsel and made no explicit finding that the reason was meritorious.* Appellant, in response to questions from the court, stated that he had not contacted the Public Defender's office in a timely manner and he did not have enough money to hire a private attorney to represent him. *Appellant offered no other explanation for the failure to obtain an attorney over a period of almost three months. He did not indicate that he was unaware of the time requirements to contact the Public Defender's office* and that he did not contact the office because he thought he could obtain the money necessary to hire an attorney.... In the case before us, *appellant offered no information that required follow up, such as a change in his financial situation or lack of knowledge. The court, after listening to the explanation, implicitly found the reason was nonmeritorious.*

(Emphasis supplied).

On occasion after occasion after occasion, this appellant was warned that it was her obligation to obtain an attorney if she wanted to be represented. On occasion after occasion after occasion, she flatly failed to do so, without the semblance of a plausible excuse. In affirming the appellant's conviction, we feel as we did in *Felder v. State,* 106 Md.App. 642, 651–52, 666 A.2d 872 (1995).

> In a desperate effort to keep the trial traffic flowing, we encourage a trial judge to warn a defendant in stern terms that he may be forced to trial without a lawyer if he fails to make timely efforts to obtain one. *To reverse the trial judge in this case would be to tell judges generally that their stern words are, when push comes to shove, a meaningless bluff. We would be telling them that* in their efforts

to keep a beleaguered production line moving *they may admonish litigants about the perils of failing to adhere to time limits, but that they are then powerless to back up their words with action.* We decline to do so.

(Emphasis supplied).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**